# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### HUNTINGTON DIVISION

**TERESA FULKS,**

          **Plaintiff,**

**v.**                                            **Case No.: 3:14-cv-29473**

**ALLSTATE PROPERTY AND CASUALTY,**
**INSURANCE COMPANY,**

          **Defendant.**

## MEMORANDUM OPINION AND ORDER

Pending before the Court are Plaintiff's Motion to Compel Defendant to Reimburse Fees and Costs Incurred by the Deposition of Vince King, (ECF No. 87), and Defendant's Response in Opposition to the Motion to Compel, or in the alternative, Motion for an Order Requiring Plaintiff to Pay the Cost of Defendant's Expert James McIntosh for Reading and Signing His Deposition. (ECF No. 95). Plaintiff filed supplemental information, and the parties appeared, in person and by counsel, on the first day of February, 2016 for informal argument on the issues.

Having thoroughly considered the matter, the Court **GRANTS** both motions and **ORDERS** the defendant to pay the plaintiff the sum of One Hundred Thirty Four Dollars ($134.00) for fees billed to the plaintiff by expert witness, Vince King, for reading and signing his deposition transcript.[1]

---

[1] The parties also agreed that the defendant shall pay the plaintiff the sum of $360 for fees billed to the plaintiff by another expert for the reading and signing of his deposition transcript.

The parties' motions involve a dispute over a fee incurred in an expert's reading and signing of his deposition transcript. On November 6, 2015, Defendant Allstate Property and Casualty Insurance Company ("Allstate") took a two hour and thirty minute deposition of Plaintiff Teresa Fulks's ("Fulks") expert witness, Mr. Vince King. On November 23, 2015, Mr. King spent two hours and thirty six minutes reviewing his deposition transcript, preparing an errata sheet, and signing the transcript. Mr. King tendered a bill in the amount of $918, representing fees for five hours and six minutes at $180 per hour. Prior to taking any expert testimony, the parties had agreed that they would each pay their own expert's deposition preparation time, and the party requesting the deposition would pay the deposition fee. However, the matter of who would be responsible for the time involved in reading and signing the transcript, and preparing an errata sheet, had not been explicitly addressed.

Upon receipt, Fulks's counsel forwarded Mr. King's invoice to Allstate and requested reimbursement for the entire amount. By letter dated December 23, 2015, Allstate sent Fulks's counsel a check for $450 to cover the time that Mr. King spent in deposition, but refused to pay his fee for reviewing and signing the deposition transcript and preparing an errata sheet. Allstate pointed out that when Fulks took the deposition of Allstate's expert, Mr. James McIntosh, Fulks paid only for the deposition time. Allstate paid Mr. McIntosh's fee for reviewing, correcting, and signing his transcript. Moreover, Allstate contended, the federal discovery rules did not require it to reimburse Mr. King for anything more than the time he actually spent in the deposition.

The parties met and conferred, but could not reach an agreement. Accordingly, Fulks filed the instant motion to compel. Allstate responded, arguing that as a matter of practice, parties were generally responsible for paying their own experts to review

2

deposition transcripts, but added that if the court ordered Allstate to reimburse Fulks for Mr. King's fees, then Allstate was entitled to be reimbursed by Fulks for Mr. McIntosh's fee for the review and signing of his deposition transcript.

### Federal Rule of Civil Procedure 26(b)(4)(E)

Fed. R. Civ. P. 26(b)(4)(A) provides that a party may depose "any person who has been identified as an expert whose opinions may be presented at trial." According to the advisory committee notes to Rule 26(b), by 1993, depositions of expert witnesses had become the norm in most courts. *See* Fed. R. Civ. P. 26(b) advisory committee notes to 1993 amendment. Recognizing the need to conform to practice, the rule was amended to clarify that expert witnesses would be subject to deposition prior to trial. At the same time, the rule on compensation of experts was amended to take into account the expense involved in deposing experts. The advisory committee acknowledged concerns that freely allowing depositions would increase the costs associated with retaining expert witnesses, but explained that these concerns would be mitigated, in part, by requiring the expert's deposition fee to be borne by the party requesting the deposition. *Id.* Rule 26(b)(4)(E)(i) continued this remedy, stating that "unless manifest injustice would result," the court must require that the party seeking discovery under Rule 26(b)(4)(A) pay the expert "a reasonable fee for time spent in responding to discovery." In other words, the applicable federal rule presumes a temporary fee-shifting; the fee is shifted to the party requesting the expert's deposition, rather than the party that retained the expert, and is temporally limited to the time the expert spends responding to the discovery posed by the requesting party.

### "Time Spent in Responding to Discovery"

As Allstate and Fulks assert, there has been considerable disagreement among

courts regarding what activities qualify as "time spent in responding to discovery;" although, very few cases address the precise activities in dispute here. In 1990, the United States District Court for the District of Colorado determined that "time spent responding to discovery" included time spent by an expert at deposition "and for the time he spent reviewing the deposition transcript." *Benjamin v. Gloz,* 130 F.R.D. 455, 456 (D. Col. 1990). However, no rationale was provided for this conclusion, primarily because the party requesting the deposition conceded the point. *See, also,* 10 Fed. Proc., L.Ed. § 26:264 (absent elaboration, stating that "a party taking the deposition of an adversary's expert must compensate the expert for the time spent at the deposition and in reviewing the deposition transcript"). The United States District Court for the District of Delaware reached a similar conclusion in 2008, but decided, without further explanation, that time spent by an expert reviewing and verifying his deposition transcript was not compensable at a "full hourly rate." *Underhill Investment Corp. v. Fixed Income Discount Advisory, Co.,* 540 F.Supp.2d 528, 539 (D. Del. 2008). Recently, the Federal Court of Claims held that "preparing an errata sheet should be part and parcel of an expert's time spent responding to discovery under Rule 26(b)(4)(E)(i), and a reasonable fee related to reviewing the deposition for transcription errors is reimbursable." *Ross-Hime Designs, Inc. v. United States*, 124 Fed. Cl. 69, 78 (2015). Nonetheless, noting the extensive changes and annotations made by the expert, the *Ross-Hime* Court deducted a percentage of the time he charged for preparing the errata sheet, indicating that the requesting party should not be required to pay "for [the expert's] revisions or explanations of his deposition testimony." *Id.*

In contrast, the United States District Court for the District of South Dakota rejected a request for reimbursement of time spent by an expert reviewing and correcting

his deposition transcript. *Patterson Farm, Inc. v. City of Britton, S.D.,* 22 F.Supp.2d 1085, 1096 (D. S.D. 1998). The Court reasoned that since reading the transcript and making corrections were not required under Fed. R. Civ. P. 30:

> if the party seeking the deposition were always required to pay for the time spent by the deponent reviewing and making changes to the deposition transcript, expert witnesses would be encouraged to request the right to review the transcript in every deposition, regardless of the necessity of such an action. Such a requirement could threaten to result in manifest injustice under Fed.R.Civ.P. 26(b)(4)(C).[2] If such costs were borne by the expert witness or by the party who retained him or her, the decision to request the review would be made with greater consideration rather than simply as an act to force the party seeking the deposition to pay additional expenses.

*Id.* The Court added, however, that when the deposing party "strongly encouraged the deponent to review the transcript so as to reduce that party's costs or to benefit its case in some way, then the relevant costs should be paid by the party seeking the deposition." *Id.* The same reasoning was adopted by several other courts, who agreed that the voluntary nature of reading, correcting, and signing the transcript essentially removed those tasks from the category of "time spent in responding to discovery." *See Rock River Commc'ns, Inc. v. Universal Music Grp.,* 276 F.R.D. 633, 635 (C.D. Cal. 2011); *Marin v. United States,* No. 06 Civ. 552(SHS). 2008 WL 5351935, at *3 (S.D.N.Y. Dec. 22, 2008); *and Mendez v. Unum Provident Corp.,* No. C04-1312JWHRL, 2005 WL 1774323, at *3 (N.D. Cal. Jul. 26, 2005).

While there are meritorious arguments on both sides, after considering all of the relevant factors, the undersigned concludes that when a retained expert reads, corrects, and signs his or her deposition transcript, those tasks constitute "time spent in responding to discovery," and the fee should be borne by the party requesting the

---

[2] Rule 26(b)(4)(C) was renumbered in 2010 to Rule 26(b)(4)(E).

deposition. To begin, although the federal rules do not require a witness to read, correct, and verify his or her deposition transcript, as a matter of practice, most retained experts insist on having the opportunity to do so. This is both reasonable and judicious. Given that expert testimony often involves technical, unfamiliar, and complex terms and concepts, the need for review is more compelling in the case of expert testimony than in non-expert testimony. Furthermore, retained expert witnesses are understandably invested in ensuring that their opinions are correctly communicated. An error in the transcription of an expert's testimony can potentially result in a significant alteration of the expert's opinion. Accordingly, the party taking the deposition should expect that the retained expert witness will want to review, correct, and verify the accuracy of the transcript as part and parcel of providing his or her opinions.  Since the party requesting the deposition generally controls the length and substance of the inquiry, that party is in the best position to budget the fees associated with finalizing the transcript.

Second, having the expert review, correct, and sign the transcript actually benefits the party requesting the deposition more than the party who retained the expert; therefore, the party requesting the deposition should pay for the review. By the time a retained expert's deposition is taken, the party requesting the deposition should have received a detailed report from the expert, which is required under Fed. R. Civ. P. 26(a)(2)(B). Consequently, the deposition is not primarily taken to obtain the expert's opinions, but rather to solicit concessions, identify weaknesses, and provide fodder for subsequent impeachment. Having a transcript that is reviewed and verified as accurate by the expert reduces, if not precludes, a later disavowal of testimony on the basis of transcription error or misunderstanding.

6

Third, the fee charged by the expert for reading, correcting, and signing his or her discovery deposition transcript would not be incurred *except for* the adverse party requesting the deposition. Therefore, the party requesting the deposition should pay the fee. Many courts that have disallowed payment for activities such as deposition preparation time have reasoned that the party requesting the deposition should not have to pay for an expert activity that benefits the retaining party, or that would likely be done by the retaining party regardless of the deposition. That logic certainly does not apply to reading, correcting, and signing the deposition transcript given that the transcript would not exist *but for* the request for discovery. Furthermore, while it is true that the retaining party would likely ask the expert to review his or her own transcript prior to trial, unless the trial were scheduled to begin shortly after creation of the transcript, it is unlikely that this review would take place within the thirty days required under Rule 30 for the official reading and signing of the deposition transcript.

Fourth, shifting this fee to the requesting party is consistent with the intent of Rule 26(b)(4)(E), as expressed in the 1993 advisory committee notes. The advisory committee appreciated the concerns conveyed by litigants over increasing expert witness fees and explicitly addressed those concerns by shifting fees connected with expert discovery to the party seeking the discovery. Thus, it follows that fees directly related to the finalization of this discovery product should be borne by the party that commissioned the product in the first instance.

Lastly, the reason given by other courts for not shifting the review fee to the party requesting the deposition is simply not persuasive. These courts suggest that if the party seeking the deposition were always required to pay for review of the transcript, expert witnesses would be encouraged to review their depositions even when review was not

7

necessary. Assuming *arguendo* that such a fear is warranted, over-billings can be easily managed under the "manifest injustice" and reasonableness standards contained in Rule 26(b)(4)(E), as demonstrated by the courts in *Underhill Investment Corp., supra.*, and *Ross-Hime Designs, Inc., supra.* With these safeguards in place, excessive fees charged by adverse expert witnesses clearly can be prevented.

Having reached this conclusion, the undersigned recognizes that Rule 26(b)(4)(E)(i) is by no means clear. Accordingly, parties are encouraged to meet and confer prior to taking expert depositions and to agree on what activities fall within the category of "time spent in responding to discovery." However, in the absence of such an agreement in this case, Fulks shall be responsible for the fee charged to Allstate by Mr. McIntosh, and Allstate shall be responsible for a reasonable fee to reimburse Mr. King for reading, correcting, and signing his transcript. As the undersigned discussed with the parties, the amount of time charged by Mr. King (two hours and thirty six minutes) to review a two hour and thirty minute deposition was not reasonable. Therefore, after deducting the amount Fulks owes to Allstate, Allstate is ordered to pay Fulks $134 to reimburse her for Mr. King's time.

The Clerk is instructed to provide a copy of this Order to counsel of record.

**ENTERED:** February 4, 2016

Cheryl A. Eifert
United States Magistrate Judge

8